Amanda K. Moran, SBN 311090
Janay D. Kinder, SBN 317344
MORAN LAW FIRM
1330 "L" Street, Suite A
Fresno, California 93721
t          *(559) 264-2688*
f          *(559) 264-2683*
info@moranlawfresno.com

Attorneys for Petitioner, Crystal Esquivel

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL ESQUIVEL,<br><br>                    Petitioner,<br><br>        v.<br><br>STATE OF CALIFORNIA<br>DEPARTMENT OF SOCIAL SERVICES<br><br>                    Respondent. | Case No.:<br><br>**MEMORANDUM IN SUPPORT OF PETITION FOR REVIEW, AND/OR EVIDENTIARY HEARING, REGARDING VIOLATION OF THE INDIAN CHILD WELFARE ACT (ICWA)**<br><br>**(Pursuant to 25 U.S.C. § 1914.)** |

## I. INTRODUCTION

### A. PARTIES

This request for review involves: [1] Petitioner, Crystal Esquivel, ("Petitioner" or "Esquivel"); and [2] Respondent, the California Department of Social Services, ("DSS" or "Respondent".) The action concerns Petitioner's parental rights over: [1] Christian; [2] Sebastian; and [3] L.M.—Petitioner's biological children.

///

///

1



**B.  PROCEDURAL SYNOPSIS**

**1.  Welfare and Institutions[1] Code § 300 Petition**

On June 11, 2019[2], DSS filed a Juvenile Dependency Petition pursuant to WIC § 300(b)(1). (1 CT 22.) This petition concerned: [1] Christian; [2] Sebastian; and [3] L.M.—Petitioner's biological children. (*Id.*)

**2.  Detention Hearing**

On June 13, 2019, the Fresno County Superior Court held a detention hearing regarding Petitioner and her biological children. (1 CT 66.) The court ordered:

[1]    A prima facie showing has been made that the children are persons described by WIC § 300.

[2]    Continuance of the children…in the home of [Petitioner] is contrary to the children's welfare and:

[a]    there is substantial danger to the physical health of the children, or the children are suffering severe emotional damage and there are no reasonable means to protect the children's physical or emotional health without removing the children from the mother, [Petitioner's] physical custody. (1 CT 67-68.)

Temporary placement, care, custody, and control were vested with DSS. (1 CT 68.)

**3.  Petitioner's Claims of Indian Ancestry**

**a.  Petitioner's ICWA-030 Notice**

On June 13, 2019, Petitioner claimed ICWA may apply through her father's side. (1 CT 81, 90.) Petitioner claimed her children may have Cherokee and Pascua Yaqui ancestry. (*Id.*)

In only looking at Petitioner's **paternal** lineage, DSS provided ICWA notice of the following information[3], (*For Christian* **(1 CT 136);** *Sebastian* **(1 CT 183); and** *L.M.* **(1 CT 159.))**

[1]    For Petitioner's Father, DSS *did list*: a First, Middle, and Last Name; and a birthdate. It is uncertain whether Petitioner's Father's last name descended from the maternal or paternal side of the family. (1 CT 140, 163, 187.)

---

[1] Herein, "WIC".

[2] It is noted that this was the third WIC § 300 Petition filed against Petitioner. (The first two were filed in 2008 and 2015.) Petitioner previously reported that none of the children had known Indian Ancestry (1 CT 28-31.)

[3] In the July 22, 2019 notice inquiry.



[2]   For <u>Petitioner's Father</u>, DSS **<u>DID NOT LIST</u>**: [a.] a current or former address; or [b.] a birthplace. (*Id.*, at 140, 163, 187.)

[3]   For <u>Petitioner's Father's Mother</u>, (*Petitioner's Grandmother on Father's side*), DSS **<u>DID NOT LIST</u>**: [a.] a name; [b.] a former or current address; or [c.] a birthdate or birthplace. (*Id.*, at 141, 164, 188.)

[4]   For <u>Petitioner's Father's Father</u>, (*Petitioner's Grandfather on Father's side*), DSS **<u>DID NOT LIST</u>**: [a.] a name; [b.] a former or current address; or [c.] a birthdate or birthplace. (*Id.*, at 141, 164, 188.)

Indisputably, a considerable amount of tracing information <u>is lacking</u>, *especially* pertaining to Petitioner's paternal lineage. Per the received response from the Cherokee and Pascua Yaqui tribes, the accuracy of the ancestry tracing depends upon the totality of information provided by DSS. (*i.e.*: 1 CT 222; "Any incorrect or omitted information could invalidate this determination.") Thus, accuracy diminishes with less provided information. The record reflects that DSS did not take additional steps to investigate, or validate, Petitioner's ICWA claims—prior to submitting notice to the tribes. Indeed, the record reflects that: [1] DSS Social Worker Rios was demoted due to his inability to keep up with his case load. (1 Aug. RT 57 l. 11-15.); [2] Rios told Petitioner that [Rios] was being demoted (*Id.*, at 19-26.); [3] Rios informed Petitioner that his demotion was in relation to Petitioner's case—as well as generally (*Id.*); [4] Rios did inform Petitioner "**he wasn't able to keep up** [with his assigned case load] (*Id.*); and [5] [Rios] "**was overwhelmed**". (1 Aug. RT 58 l. 6.) Regarding this information, the court indicated: "[Petitioner] heard [this information] from [Rios]. [The court] would allow it…" (1 Aug. RT 59, l. 1.)

In light of the overall record, Petitioner's ICWA-030 report was submitted with insufficient information. Petitioner's ICWA notice was submitted without active efforts, or diligence, in conducting any family investigation—to obtain the missing information.

### 4.   Indisputably, DSS' ICWA <u>Inquiry</u> Lasted Only *<u>Five</u>* or *<u>Six</u>* Days, *<u>Maximum</u>*

The record reflects that Petitioner claimed ICWA on June 13, 2019. (1 Aug. RT 15, l. 23-24.) During the morning session, <u>on July 17, 2019</u>, DSS represented to the court that DSS <u>received</u> Petitioner's ICWA notice on <u>July 11 [2019]</u>. (*Id.*, at 20-22.) (This statement is concerning because DSS received notice on June 13, 2019—almost a full month earlier, for which DSS did nothing with the information.)

3



When DSS informed the court that: "[DSS was notified [of Petitioner's ICWA claim] on July 11 [2019]", the court <u>reiterated</u> that Petitioner claimed ICWA on "June 13 [2019]". (1 Aug. RT 15.) The court inquired as to "what happened on that"—regarding DSS' representation that: "[DSS is] is working diligently in one month". (*Id.*, at 20-26.) The court stated: [How has DSS been] diligent? What [is DSS] doing?" (1 Aug. RT 15-16, l. 26-01.) DSS replied that ICWA was overlooked; DSS overlooked the ICWA claim because they were using old motions—for which ICWA was not indicated. (1 Aug. RT 16, l. 2-9.) The court admonished: "[s]o in the future[,] ICWA 020 and things do change case to case[,] so [DSS] always [has] to have that covered and not rely on old motion[s]." (*Id.*, at 6-8.)

DSS' maintained their position that DSS was <u>diligently attempting</u> to contact additional family members[4]. (This representation is concerning because factually: [1] DSS made <u>zero</u> efforts to locate family members <u>from June 13, 2019 to July 11, 2019</u>; [2] DSS misrepresented to the Court that they diligently attempted, <u>for a **month**</u>, to find family members—despite also informing the Court that they received the notice <u>July 11, 2019—**six** days before</u> [There are no calendars in existence which list six days as a full month]; and [3] DSS did not advise the Court that July 13 and 14 fell on a weekend, <u>for which no work was performed</u>. Thus, for the July 17, 2019 representation of diligence, the longest period of time DSS <u>could have actually been diligent</u>, was **<u>four days.</u>**)

On July 17, 2019, DSS requested a **<u>75-days continuance</u>** regarding the reported ICWA notice. (*Id.*, at 14-16.) Presumably, this 75-day continuance was to afford DSS the opportunity to investigate Petitioner's ICWA claim further. Presumably, it would have allowed DSS to contact Petitioner, her aunts, and the extended family, to conduct interviews and an investigation. Ultimately, the court continued the matter until October 22, 2019. (1 Aug. RT 17.)

Shockingly, on <u>July 22, 2019</u>, (**<u>just two full business days after the July 17, 2019</u>**

---

[4] This Court may take judicial notice that when this representation was made, there were only **<u>three full business days</u>** between when DSS received the ICWA notice to the July 17, 2019 <u>representation of diligence</u>. (July 13, 2019 and July 14, 2019 fell on Saturday and Sunday; DSS had: Friday, July 12, 2019; Monday, July 15, 2019; and Tuesday, July 16, 2019, to perform the represented "diligence".)

MORAN
LAW FIRM

**hearing**[5]), DSS submitted a signed declaration, under penalty of perjury, that the information provided in the submitted ICWA notice **included all of the known** information about the relatives[6]. No additional family interviews or investigative information was updated and/or provided <u>after July 22, 2019</u>. No further information was collected and provided to either the Yaqui or Cherokee tribes. There is <u>zero documented information</u> memorializing either: [1] conducted interviews; and/or [2] investigative steps taken by DSS, regarding ICWA inquiries, during the continuance period.

As previously detailed above, based upon the record, DSS: [1] received notice of Petitioner's ICWA claim on July 11, 2019, a Thursday; [2] <u>three</u> business days later, DSS represented to the Court, (on July 17, 2019), that they were being diligent (for one month), but needed a 75-day continuance; and [3] <u>two</u> days later, submitted a declaration, (on July 22, 2019), stating all known information was provided to the tribes. The time frame from which DSS claimed to receive notice was twelve days; four of these days fell on Saturday and Sunday. Two days would be excluded as days when the information was received and submitted. Thus, DSS only performed their purported "investigation", and "interviews", within the course of **five to six days**.

> **5. A Demotion of The DSS Social Worker, For Inability To "Keep Up" On the Assigned Caseload, Presents A Presumption That DSS Was: [1] Not Diligent; And [2] Active Efforts Were Not Taken by DSS To Comport with ICWA Requirements**

On the October 22, 2019, hearing, the court was apprised of the following:

---

[5] The Court may take judicial notice: [1] the hearing took place on July 17, 2019, which is a Wednesday; [2] July 18, 2019 and July 19, 2019 fell on Thursday and Friday; [3] July 20, 2019 and July 21, 2019 fell on Saturday and Sunday; and [4] July 22, 2019, the submission date for the declaration, fell on a Monday.

[6] **<u>Curiously</u>**, the July 22, 2019 Declaration was drafted with Cruz Rios listed as the Social Worker assigned to the case; however, the Declaration appears to be signed by SW Kathleen Miller **"for Mr. Rios."** (1 CT 145, 169, 193.) This is an issue because: [1] generally, a person may not sign a declaration, under penalty of perjury, for the personal knowledge and actions taken by someone else—because of reliability concerns; and [2] SW Rios was demoted for: [a.] being "overwhelmed" in his case load; and [b.] being unable to keep up with his work. (1 Aug. RT 57-58.) Indeed, the reasons supporting SW Rios' demotion **<u>directly conflict</u>** with this declaration supporting diligence. A reasonable inference could be drawn that: SW Rios **was not diligent** because he did not personally sign the declaration. DSS' failure to have SW Rios sign this declaration exceeds harmless error because it is a procedural defect <u>which violates the federal mandates of ICWA</u>.

MORAN LAW FIRM

[1]     Social Worker Rios *was* the <u>former</u> primary social worker handling Petitioner's case;

[2]     Social Worker Rios <u>was demoted</u> from Petitioner's case;

[3]     Social Worker Rios informed Petitioner that he was demoted because of Rios' inability to diligently and competently handle all his assigned case load—including Petitioner's case. (1 Aug. RT 56-57.)

[4]     Social Worker Rios did not sign, under penalty of perjury, a declaration of diligence. SW Rios' declaration was signed on behalf of a second social worker—for SW Rios. (This is concerning because the statements made by SW Rios directly contradict the contents of the declarations.

The court was informed that Petitioner learned, from Social Worker Rios personally, that Rios was demoted in his job, partly as a result of his inability to competently perform his duties on Petitioner's case. (*Id.*) Despite this relevant information pertaining directly to the quality, accuracy and voracity of the work done by Rios in this case, Respondent objected, arguing the information was privileged. (*Id.*) In an offer of proof, Petitioner argued: [1] Petitioner was told directly <u>by Rios</u> that Rios <u>was demoted</u> (1 Aug. RT 57 l. 11-15.); [2] Rios told Petitioner the substantive information regarding why Rios was demoted (*Id.*, at 19-26.); [3] Rios informed Petitioner that Rios' demotion was in relation to Petitioner's case—as well as generally (*Id.*); [4] Rios did tell Petitioner "**he wasn't able to keep up** [with his assigned case load] (*Id.*); and [5] [Rios] "**was overwhelmed**". (1 Aug. RT 58 l. 6.) Regarding this information, the court indicated the information was relevant and not privileged as: "[Petitioner] heard [this information] from [Rios]. [The court] would allow it…" (1 Aug. RT 59, l. 1.)

The foregoing information, provided to the court on October 22, 2019, supports the strong presumption that: [1] no additional family finding was performed; [2] zero additional family members were interviewed regarding possible ancestry; and [3] no investigation was conducted to acquire additional ancestry information. Rios' statements to Petitioner, as the demoted social worker, are **admissions** by DSS that Petitioner's case did not receive the active efforts and/or diligence **<u>required</u>** by the Federal Government under ICWA.

///

6

### 6.  ICWA Found Inapplicable

#### a.  In the Superior Court

At the October 22, 2019, hearing, the court granted DSS' motion to declare ICWA inapplicable. (Attachment A, 27.) During this hearing, the court did not request for review any documentation of DSS' active efforts regarding DSS' investigation into the ICWA claims. (*Id.*) Instead, the court appeared to inappropriately shift DSS' burden to Petitioner by questioning Petitioner about the claim. (*Id.*) The court appeared to improperly press <u>Petitioner</u> for more details—regarding Petitioner's claim. The court concluded that: "[the court] think[s] [the court is] okay as far as information". (*Id.*)

#### b.  In the Fifth District Court of Appeal

The Fifth District Court of Appeal affirmed the Superior Court's ruling by stating: "[t]he record contains substantial evidence of proper notice to the Cherokee and Pascua Yaqui tribes." (*Id.,* at 28.) It is noted, the Cherokee and Pascua Yaqui tribes responded to the notice inquiry dated <u>July 22, 2019</u>. As mentioned above, the July 22, 2019 letter is concerning because:

[1]   DSS represented to the court that DSS only became aware the ICWA claim on July 11, 2019. (The court reminded DSS that Petitioner made the ICWA claim on June 13, 2019);

[2]   DSS represented a month-long diligence search—despite only becoming aware of the claim <u>three days earlier</u>. (The court inquired how DSS had been diligent in the month since Petitioner made the ICWA claim. DSS stated it <u>overlooked</u> the ICWA inquiry because it was never addressed in previous matters);

[3]   DSS requested a 75-day continuance to presumably preform an investigation and conduct interviews—which they never performed.

[4]   DSS submitted the notice inquiry for tribal review <u>just **two days** after the July 17, 2019,</u> hearing;

[5]   DSS never documented diligent, and/or active efforts, of: family finding, family interviews, or investigation into Petitioner's June 13, 2019, ICWA claims;

[6]   The time between receiving Petitioner's ICWA claim, and submitting the notice inquiry, was only <u>five to six business days</u>—presumably not enough time to perform due diligence and active efforts;

[7]   DSS requested a 75-day continuance to perform an "investigation"—but submitted a notice inquiry, **two days** <u>after the July 17, 2019, court appearance</u>, based off information they previously had;

[8]   The July 22, 2019, notice letter was drafted by Social Worker Rios—who did



7

inform Petitioner that he was being demoted because: [a] Rios was unable to "keep up" with the assigned case load; and [b] Rios "was overwhelmed".

[9] The July 22, 2019, declaration of SW Rios, supporting diligence, was not signed by SW Rios—it was instead improperly signed by another worker "for Mr. Rios." This fact is concerning because: [1] generally, a person may not sign a declaration, under penalty of perjury, for the personal knowledge and actions taken by someone else—because of reliability concerns; and [2] SW Rios was demoted for: [a.] being "overwhelmed" in his case load; and [b.] being unable to keep up with his work. (1 Aug. RT 57-58.) Thus, the included declaration, not actually a declaration signed by SW Rios, is in stark contrast to the requirement of diligence. A reasonable inference supports there **was no diligence** because the person claiming diligence was demoted for being "overwhelmed" and "unable to keep up" with his case load. Simply, SW Rios did not personally sign the declaration; DSS improperly allowed another SW to sign for SW Rios' conduct—*representing* diligence after Rios was demoted for failure to perform diligently. DSS' failure to have SW Rios sign this declaration exceeds harmless error because it is a procedural defect which violates the federal mandates of ICWA.

[10] All three ICWA-030 Letters were sent **without signature** of an attorney declaring the petition, **and its required contents**, were mailed. The ICWA-030 was further missing any signature supporting the Certificate of Mailing.

When considering the ICWA inquiry letter's submission[7], in juxtaposition with Social Worker Rios' claims[8], a logical and rational nexus cannot be drawn to support the Court of Appeals holding[9]. Instead, the facts support the strong inference that: [1] no additional family finding was performed; [2] zero additional family members were interviewed regarding possible ancestry; and [3] no investigation was conducted to acquire additional ancestry information. Additionally, Rios' statements to Petitioner, as the demoted social worker, are admissions by DSS that Petitioner's case did not receive the active efforts and/or diligence **required** by the Federal Government under ICWA.

### 7. Disposition Hearing

After the disposition hearing, on October 24, 2019, the court, in relevant part, held:

[1] there is clear and convincing evidence that continuance of the children in the home of [Petitioner] is contrary to the children's welfare and:

[a.] there is or would be a substantial danger to the physical health, safety,

---

[7] Sent only two days after representations were made by DSS that Petitioner's claims were "overlooked" *and* DSS needed a 75-day continuance.

[8] Rios claimed he was overwhelmed *and* could not keep up with the assigned case load.

[9] "The record contains substantial evidence of proper notice to the Cherokee and Pascua Yaqui tribes." (Attachment A, 28.)



protection, or physical or emotional well-being of the children if the children were returned home and there are no reasonable means by which the children's physical health can be protected without removing children from [Petitioner's] custody. (1 CT 320.)

The court also bypassed services and set a WIC § 366.26 hearing for January 29, 2020. (1 CT 224.)

**8. Petitioner's Appeal**

Petitioner filed a timely appeal on January 22, 2021. (Attachment B.) Petitioner's appeal was filed in the Fifth Appellate District, for the State of California, under case number F081686. In relevant part, Petitioner's appeal raised issues concerning ICWA (See Attachment B; [*e.g.*: [1] failure of DSS to conduct an adequate inquiry of extended family members regarding omitted ICWA information; and [2] failure to document/demonstrate that an adequate inquiry had been performed.])

**9. Respondent's Brief Arguments**

County Counsel filed a Reply Brief for DSS on February 22, 2021. (Attachment C.) In this brief, County Counsel states:

> [DSS] does not dispute that [DSS] was required to make further inquiry by interviewing relatives and any other persons who reasonably could have been expected to have information regarding the possible Indian status of the children after mother claimed that she may have Cherokee and Yaqui ancestry on June 13, 2019. (Attachment C, 38; 1 CT 81.)

Rather than demonstrate, through <u>documented</u> efforts of an adequate inquiry, County Counsel asserted: "[t]here is nothing in the current record that establishes that the department did not discharge its official duty to investigate the child's possible Cherokee and Yaqui ancestry with further interviews of mother or making efforts to locate identified relatives that may have had additional information…." (Attachment C, 39.)

County Counsel then **burden shifts** their **own duty** by asserting: "[Petitioner] has failed to demonstrate that [DSS] failed to interview her further regarding…ancestry or make other required efforts to investigate the claim[s]…" (Attachment C, 39.)

County Counsel's leading argument is, essentially, that Petitioner cannot prove, or

9



1    disprove, whether DSS performed their **required** search—and, therefore, should not receive any

2    relief. Simply, this reasoning does not comport with Federal Law. Moreover, County Counsel's

3    argument is not factually accurate.

4        Certainly, Petitioner would know whether she, or her family, was investigated further by

5    DSS; Per her attached declaration—she was not investigated. Additionally, the record **does reflect**

6    DSS spent less than <u>five to six days</u> "investigating" Petitioner's claims. Considering this was not

7    the only case DSS was working on, in the moment, it is unlikely that DSS could have performed

8    an adequate search in such a short time.

9        Last, DSS **did acknowledge error** in overlooking Petitioner's ICWA claim—because

10   DSS relied on outdated information. (1 Aug. RT 15-16; DSS was informed on June 13, 2019 of

11   Petitioner's ICWA claim; however, DSS did not begin investigating the claim until July 11, 2019.

12   DSS concluded their investigation on July 22, 2019—only allowing for <u>five to six days</u> for DSS'

13   adequate investigation. Of more concern, the July 22, 2019 declaration, supporting diligence, was

14   signed by a person "for SW Rios". This is problematic because SW Rios was demoted by DSS

15   for his feeling "overwhelmed" and inability to "keep up" on his case load. DSS' demotion of SW

16   Rios, in tandem with a different social worker signing for SW Rios, presents a further presumption

17   that DSS was not diligent in their investigation.)

18   **10. Appellate Court Opinion**

19       On April 06, 2021, the Fifth Appellate Court, for the State of California, filed an opinion

20   in Petitioner's case. (Attachment A; Case number F081686.) This opinion noted:

22       Under California law, the court and county child welfare department
         "have an affirmative and continuing duty to inquire whether a child,"
23       who is the subject of a juvenile dependency petition, "is or may be
         an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W. supra,* 1
24       Cal.5[th] at p.9; Cal. Rules of Court, rule 5.481(a)[].) (Attachment A,
         25.)

25       This opinion appears to also place the burden on Petitioner—to provide evidence and/or

26   further contact information—regarding Petitioner's heritage. The opinion disregards any inquiry

27   as to DSS' <u>lack of documented efforts</u> regarding the investigation performed. Curiously, the

28   opinion notes that DSS performed an additional ICWA inquiry on October 22, 2019, to which



DSS argues Petitioner did not report any ancestry. (Attachment C, 28.) It is incredible that DSS—rather than spending more that five to six days executing their required investigation—instead prepared a new ICWA inquiry.

Last, the opinion appears to incorrectly shift the burden to Petitioner to subpoena DSS about their efforts to perform an adequate investigation. (Attachment A, 29.) The opinion of the court contends that: "[DSS] now lacks [the] opportunity" to introduce "additional evidence to show that it had made an adequate inquiry" *because* Petitioner never raised the issue sooner, or subpoenaed DSS. (Attachment A, 29.) This analysis does not appear to comport with Federal Law <u>requiring</u> efforts be documented within the record. Simply, had an adequate investigation been performed, the required documented support would have been presented. DSS would have proactively presented such evidence to alleviate any doubt whether DSS performed their "affirmative and continuing duty." Instead, the indisputable facts are: [1] the required DSS burden, (to demonstrate documented efforts in performing adequate investigation), was incorrectly shifted to Petitioner; [2] DSS only "investigated" Petitioner's claims for <u>five to six days</u> (July 11, 2019 through July 22, 2019); [3] DSS did acknowledge error in overlooking Petitioner's claims (1 Aug. RT 16); [4] DSS improperly represented diligence by signing a declaration for SW Rios *after* SW Rios was demoted for being "overwhelmed" and unable to "keep up" with his case load; and [5] DSS curiously completed a new ICWA inquiry on October 22, 2019 (Attachment A, 29).

Ultimately, the Appellate Court concluded: "it is unlikely that information about [Petitioner's] 'aunts' or 'sisters' would establish [native] ancestry for [Petitioner's] children[,] when the information of [Petitioner's] father did not." (Attachment A, 28.) Respectively, this ruling is inconsistent with the Federal language of ICWA.

### C. STATEMENT OF FACTS

#### 1. Referral

On June 05, 2019, Sebastian, (Petitioner's second child), arrived late and inappropriately dressed for his sixth-grade graduation. (Attachment A, 3.) During Petitioner's presence at the graduation, it was reported that Petitioner: [1] acted bizarrely; and [2] had slurred and rapid



speech. (*Id.*) Sebastian was distraught—and needed to be taken home. (*Id.*)

### 2. Initial Home Assessment

DSS' initial home assessment noted that the home had no electricity and Petitioner was behind on rent. (Attachment A, 3.) All three children were noted as being appropriately dressed and groomed. (*Id.*) All three children stated they always had food to eat. (*Id.*)

A safety plan was devised to allow the children to stay at their aunt's home. (*Id.*) Aunt subsequently advised DSS that the children warned her that they would run away if DSS attempted to detain them. (*Id.*)

### 3. Petition

On June 06, 2019, Petitioner tested positive for methamphetamine. (Attachment A, 2.) Petitioner's relapse was triggered due to Petitioner's vehicle being stolen—which led to Petitioner's termination of employment for lack of reliable transportation. (*Id.*, at 5.)

On June 11, 2019, DSS filed a WIC § 300(b) petition for Petitioner's three biological children. ([1] Christian; [2] Sebastian; and [3] L.M.) (Attachment A, 2.) DSS' WIC § 300(b) petition was brought on the grounds that Petitioner suffered from substance abuse—which negatively affected Petitioner's ability provide regular care, supervision, and protection for the children. (*Id.*) The children were found to be living in an unsafe and unsanitary home, with dirty dishes, spoiled food, trash, dirty clothing, and no electricity. (*Id.*)

The June 11, 2019 petition was Petitioner's third WIC § 300(b) filing from DSS—all three petitions regarded Petitioner's inability to overcome her addiction to methamphetamine. (*Id.*) Petitioner received previous petitions in 2008 and 2015. (*Id.*) In both previous WIC § 300(b) matters, Petitioner was able to: [1] reunify with her children; and [2] maintain short stints of sobriety before relapsing. (*Id.*, at 5.)

### 4. Substance Abuse, Addiction, and Underlying Trigger

Petitioner acknowledged her addiction to illegal substances began when she was the age of fourteen. (Attachment A, 4.) Petitioner has made several attempts to overcome her addiction; however, she relapsed when her car was stolen, and she could not obtain employment. (*Id.*, at 5.)

///



**5. Testimony Regarding Desire to Reunify**

During testimony, the children expressed they wanted to reunify with Petitioner. (Attachment A, 5.) The children testified that they loved and missed Petitioner. (*Id.*) The children testified that they liked their foster family and stated they were having fun; however, they were not certain whether they wished to be adopted. (*Id.*, at 5-6.) The children always believed they would return to Petitioner.

**6. Changed Circumstances and Attempts to Overcome Addiction**

DSS' main concern in this matter was Petitioner's continued sobriety. (Attachment A, 6.) DSS expressed concern that this was Petitioner's third WIC § 300(b) petition. (*Id.*) Petitioner completed four substance abuse programs—for which Petitioner was only able to maintain sobriety for seven to eight months. (*Id.*)

Petitioner relapsed five months before the removal of her children; Petitioner entered treatment the day after they were removed. (*Id.*) Petitioner attended NA/AA two to three times a week during the proceedings. (*Id.*) Petitioner acknowledged the changed circumstances in her case is the positive support she receives through this treatment. (*Id.*) Petitioner testified that her current mentor's relationship is the direct reason for her successful sobriety. (*Id.*) Through action, Petitioner attempted to demonstrate to the court a change in circumstance by: [1] completing a residential treatment program; [2] completing an outpatient aftercare program; [3] completing parenting classes; [4] engaging in mental health services; [5] obtaining and maintaining stable employment; [6] renewing her commitment to the church; and [7] continuing to test negative. (*Id.*, at 6-8.) Despite the termination of her parental rights, Petitioner has continued diligence in testing. To date, **more than two years** removed from the WIC § 300 petition, Petitioner has <u>continuously</u> maintained testing negative. (See Attachment D.2.) Petitioner has maintained her connection with her faith and with her sponsor/mentor. Petitioner maintains her sobriety.

**7. Termination of Parental Rights**

The court found that Petitioner, and her children, were bonded and loved each other deeply. (Attachment A, 10.) The court found Petitioner was committed and worked hard in: [1] developing a support system; [2] obtaining and maintaining employment; and [3] appeared totally

13



1    sober. (*Id.*) The court stated, however, that it found Petitioner's demeanor, throughout the trial, to

2    be: "not gathered and emotionally put together." (*Id.*) The court opined that Petitioner's efforts,

3    while valiant, demonstrated only "changing circumstances", not "changed circumstances." (*Id.*,

4    at 11-14.) Thus, the court terminated Petitioner's parental rights and freed the children for

5    adoption. (*Id.*)

6        **8. Claims of ICWA**

7        On June 13, 2019, Petitioner claimed Cherokee and Yaqui heritage on an ICWA-020.

8    (Attachment A, 4.) The court found ICWA may apply. (*Id.*)

9        **D. SYNOPSIS OF ARGUMENT**

10       **1. Instant Action Concerns An Issue Regarding DSS' Violations Of Federal Law**

11       Petitioner petitions for review of the denial of her California Supreme Court petition. The

12   California Supreme Court denial involved, in relevant part, a claim that the California Department

13   of Social Services, ("DSS"), violated the Indian Child Welfare Act, ("ICWA"). The DSS' failures

14   <u>directly violate the plain and unambiguous language of: [1] 25 U.S.C. § 1912(d); and [2] Code of</u>

15   <u>Federal Regulations § 23.120(b)</u>. This Court has jurisdiction to review this petition under 25

16   U.S.C. § 1914. DSS <u>violated</u> key protection requirements of ICWA when: [1] DSS <u>failed to meet</u>

17   <u>the requirement to include the available resources of extended family members</u>; and [2] DSS

18   <u>failed to provide documentation</u> of active/diligent efforts to ascertain Indian (Native American)

19   ancestry. Petitioner claims the California Supreme Court <u>further erred</u> in denying a hearing for

20   her petition—based upon the ICWA merits. The California Supreme Court's denial of Petitioner's

21   claims exhausted her state remedies.

22       **E. PETITIONER'S PRAYER FOR RELIEF**

23       The Ninth Circuit Court of Appeals held in <u>Doe v. Mann</u>, (415 F.3d 1038, 1041 (9th Cir.

24   2005), (<u>Mann</u>)), that: a petitioner may invoke § 1914[10], which provides that a parent "may petition

25   <u>any</u> court of competent jurisdiction to invalidate" a parental rights termination order. (Emphasis

26   added.) In <u>Mann</u>, Mary Doe, (Doe), sought a declaration that the state court judgment, (which

27

28   [10] Herein: "25 U.S.C.§§ 1911, 1912, 1913, and 1914 will be referenced only as "§ 1911…§ 1914".



terminated Doe's parental rights and approved the adoption of Doe's child), were null and void for lack of jurisdiction under ICWA. In allowing Doe's petition to be heard at the Federal Level, the Ninth Circuit Court of Appeals: "found no reason to foreclose a § 1914 action in federal court, even where the parties had participated in the state court proceeding. (Mann, *supra,* 415 F.3d 1038.)

Like Doe in Mann, Petitioner petitions this Court for review pursuant to § 1914. Petitioner prays this Court reviews her claims that: DSS violated key protection requirements of ICWA when: [1] DSS failed to meet the requirement to include the available resources of extended family members; and [2] DSS failed to provide documentation of active/diligent efforts to ascertain Indian (Native American) ancestry. Upon subsequent review, Petitioner prays this Court makes the determination that DSS did fail to meet vital requirements of ICWA. Like Doe, Petitioner prays this Court: [1] Declare the state court judgment[11], (which terminated Petitioner's parental rights and approved adoption of Petitioner's children), to be null and void; and [2] Grant such other and further relief as may seem just under the circumstances.

## II. ISSUES RAISED

1. Does This Court Have The Authority And Jurisdiction To Hear Petitioner's § 1914 Petition?

2. Did DSS Fail To Meet The Federal Requirements Of ICWA By Not Employing Active Efforts In: [1] Interviewing Extended Family Members; And [2] Investigating Petitioner's ICWA Claim?

3. Did DSS Fail To Meet The Federal Requirements Of ICWA By Failing To Provide The Court With Documentation Of Active/Diligent Efforts To Ascertain Indian (Native American) Ancestry?

## III. ARGUMENT

### A. THIS COURT HAS THE AUTHORITY AND DISCRETION TO HEAR THIS PETITION

#### 1. This Court Has Jurisdiction Under 25 U.S.C. § 1914

This Court has jurisdiction to review this petition under 25 U.S.C. § 1914. Under § 1914:

> [1]    Any Indian child who is the subject of any action for foster

---

[11] Fresno County Superior Court Case No.: 08CEJ300045; Fifth District Court of Appeal Case No.: F081686; and California Supreme Court Case No.: S268743.



1  care placement or termination of parental rights under State
2  law, **any parent** or Indian custodian from whose custody
   such child was removed, and the Indian child's tribe **may**
3  **petition *any* court of competent jurisdiction to invalidate**
   **such action upon a showing that such action violated any**
   **provision of sections 1911, 1912, and 1913 of this title.**
4  (Emphasis added.)

5  [2]  The Indian Child Welfare Act (ICWA) provides that **any**
        **parent**…**may petition a court of competent jurisdiction**
6       **under 1914**. (In re Phillip A.C., II, 149 P.3d 51 (Nev. 2006).
        Likewise, **any parent…has independent standing to**
7       **petition**. (In re Kreft, 384 N.W.2d 843 (Mich. Ct. App. 1986;
        emphasis added).

8

9        Petitioner is the biological mother of: [1] Christian; [2] Sebastian; and [3] L.M.

10  Petitioner's action concerns <u>DSS' violations</u> of the Indian Child Welfare Act, ("ICWA"). DSS

11  directly violated the plain and unambiguous language of: [1] 25 U.S.C. § 1912(d); and [2] Code

12  of Federal Regulations § 23.120(b). Under § 1914, Petitioner, <u>as a parent</u>, may petition *any* Court

13  of Competent Jurisdiction for DSS' violation of § 1912.

14       **a.  Under § 1914, This Ninth Circuit Court Is A Court of Competent Jurisdiction**

15       While there is split authority regarding whether Federal Courts meet the definition of a

16  Court of Competent Jurisdiction, the Ninth Circuit set the precedent, in <u>Doe v Mann</u>, (415 F.3d

17  1038 (9th Cir. 2005), ("<u>Mann</u>")), that: "§ 1914 grants federal district courts the authority to

18  invalidate state court actions that violate §§ 1911, 1912, and 1913." The <u>Mann</u> Court additionally

19  held: "the federal district court had jurisdiction…because the federal district court had federal

20  question jurisdiction over [the] claim[], and § 1914 grants federal district courts the authority to

21  invalidate state court actions that violate §§ 1911, 1912, and 1913." (<u>Mann</u>, <u>supra</u>, 415 F.3d 1038).

22       Here, Petitioner is a citizen of California. The Fresno County Superior Court of California

23  originally held jurisdiction over Petitioner's claim. DSS, an agency authorized under the State of

24  California, brought a WIC § 300(b) petition against Petitioner on June 11, 2019.

25       On June 13, 2019, Petitioner claimed ICWA may apply <u>through her father's side</u>. (1 CT

26  81, 90.) Petitioner claimed her children may have Cherokee and Pascua Yaqui ancestry. (*Id.*)

27       DSS reported receipt of Petitioner's ICWA claim on July 11, 2019. (1 Aug. RT 15.) On

28  July 17, 2019, DSS requested a 75-day continuance—to conduct an ICWA investigation and

16



interview Petitioner's extended family. (*Id.*, at 14-16.) Two days after making the continuance request, DSS submitted a signed declaration, under penalty of perjury, that the information provided in the submitted ICWA notice **included all the known** information about the relatives. No additional family interviews or investigative information was updated and/or provided after July 22, 2019.

On October 22, 2019, ICWA was found inapplicable by the court. (Attachment A, 27.) The court did not request any documentation of DSS' active efforts regarding DSS' investigation into the ICWA claims. (*Id.*) Instead, the court inappropriately shifted DSS' burden to Petitioner by questioning Petitioner about the claim. (*Id.*) The court improperly pressed <u>Petitioner</u> for more details—regarding Petitioner's claim. The court concluded that: "[the court] think[s] [the court is] okay as far as information". (*Id.*)

On timely appeal, Petitioner appropriately asserted ICWA violations by DSS. (See <u>In re S.M.H.</u>, 103 P.3d 976, 982 (Kan. Ct. App. 2005); <u>In re S.R.M.</u>, 153 P.3d 438 (Colo. Ct. App. 2006) [§ 1914 provides a basis to raise ICWA violations for the first time on appeal.]; See also Attachment B; [*e.g.*: [1] failure of DSS to conduct an adequate inquiry of extended family members regarding omitted ICWA information; and [2] failure to document/demonstrate that an adequate inquiry had been performed.]) The Fifth Appellate District affirmed the lower court's holding. The California Supreme Court denied Petitioner's request for review.

Petitioner seeks relief from this Court, appropriately under § 1914, for DSS' violation, perpetuated by the California Superior and Appellate Courts, of federal ICWA violations. (Specifically, active efforts and diligence regarding notice under § 1912.) The holding of <u>Mann</u>, (<u>supra</u>, 415 F.3d 1038), allows this Court the authority and jurisdiction to hear this matter.

### b. Ninth Circuit Precedent

The Ninth Circuit has established precedent allowing a petitioner access to relief in Federal Courts. In <u>Mann</u>, <u>supra</u>, 415 F.3d 1038, the Ninth Circuit found no reason to foreclose a § 1914 action in Federal Court, even where the parties had participated in the state court proceeding. This comports with an earlier decision in the Tenth Circuit, <u>Roman-Nose v. New Mexico Dep't of Human Servs.</u>, 967 F.2d 435 (10th Cir. 1992), which found no reason to prevent a Federal



Court action by parents who participated in a New Mexico state court ICWA proceeding. The court ruled that the Federal Court <u>had subject matter jurisdiction</u> under the ICWA to proceed, although it recognized the later possibility of defenses, such as res judicata, being raised by the opposing party.

The <u>Mann</u> Court also concluded that federal district courts have jurisdiction to hear § 1914 petitions under <u>federal question jurisdiction</u>. (<u>Mann</u>, <u>supra</u>, 415 F.3d at 1041.) The <u>Mann</u> Court ultimately concluded: "the federal district court had jurisdiction to consider [Petitioner's] complaint because the federal district court had federal question jurisdiction over [Petitioner's] claims, and § 1914 grants federal district courts the authority to invalidate state court actions that violate §§ 1911, 1912, and 1913." (*Id.*)

Under the facts, Petitioner has legal standing to petition this Court for review of DSS' violation of § 1912. Moreover, this Court is a Court of Competent Jurisdiction because: [1] Petitioner's petition concerns a federal question—as it relates to ICWA; and [2] this Court has both federal question and subject matter jurisdiction to review Petitioner's petition under § 1914.

**B. DSS FAILED TO MEET THE FEDERAL REQUIREMENTS OF ICWA BY NOT EMPLOYING <u>ACTIVE EFFORTS</u> IN: [1] INTERVIEWING EXTENDED FAMILY MEMBERS; AND [2] INVESTIGATING PETITIONER'S ICWA CLAIM**

**1. California's Termination Order May Be Invalidated Upon This Court's Finding That ICWA Requirements Were Violated Because DSS Failed to Make Active Efforts Under ICWA Requirements**

ICWA provides important procedural and substantive standards, to be followed in State-administered proceedings, concerning possible removal of an Indian child from their family. (See *e.g.*, 25 U.S.C. 1912(d) (requiring provision of "active efforts" to prevent the breakup of the Indian family); *id.* 1912(e)-(f) (requiring specified burdens of proof **before** foster-care or <u>termination of parental rights may be ordered</u>.); emphasis added.) The parent, child, or tribe may file a motion to <u>invalidate a court order</u> if any of the provisions of Sections 1911, 1912, or 1913 have been violated by DSS. (See 25 U.S.C. § 1914). <u>If "active efforts" were not made by DSS, as required by 25 U.S.C. § 1912(d), the custody order may be invalidated upon motion by any party.</u> If the

18

MORAN
LAW FIRM

court invalidates the order, the child **must be returned home** unless DSS initiates a new request for emergency custody and meets the heightened burden of proof under ICWA.

### a. Reversible Error Exists Because Active Efforts Were Not Made Prior To Removal Of The Children

On June 11, 2019, DSS filed a Juvenile Dependency Petition pursuant to WIC § 300(b)(1). (1 CT 22.) On June 13, 2019, the Fresno County Superior Court held a detention hearing regarding Petitioner and her biological children. (1 CT 66.) Also on June 13, 2019, Petitioner claimed ICWA may apply through her father's side. (1 CT 81, 90.) Petitioner claimed her children may have Cherokee and Pascua Yaqui ancestry. (*Id.*) The June 13, 2019 order declared: temporary placement, care, custody, and control [would be] vested with DSS. (1 CT 68.) The children were subsequently placed in foster care with the would-be adopting parents.

On July 17, 2019, DSS represented to the court that DSS <u>received</u> Petitioner's ICWA notice on <u>July 11 [2019]</u>. (*Id.*, at 20-22.) (This statement is concerning because DSS received notice on June 13, 2019—almost a full month earlier, for which DSS did nothing with the information.) DSS misrepresented that, for one-month, DSS had been diligent in their family finding obligations. The court stated: [How has DSS been] diligent? What [is DSS] doing?" (1 Aug. RT 15-16, l. 26-01.) From June 13, 2019, through July 11, 2019, ICWA was <u>overlooked</u> by DSS. DSS stated to the court that DSS <u>overlooked the ICWA claim</u> because they were using old motions—for which ICWA was not indicated. (1 Aug. RT 16, l. 2-9.) From June 13, 2019, until July 11, 2019, the children were placed into foster care—**without any active efforts regarding Petitioner's ICWA claims.** Undeniably, DSS admitted Petitioner's ICWA claims were "overlooked", and no investigation and/or interviews were preformed—as required by 25 U.S.C. 1912(d). Rather than place the children back with Petitioner, or Petitioner's family, the court committed error by admonishing DSS: "[s]o in the future[,] ICWA 020 and things do change case to case[,] so [DSS] always [has] to have that covered and not rely on old motion[s]." (*Id.*, at 6-8.) The court committed error because no active efforts were taken at this point—and the children should have been returned to Petitioner.

The July 17, 2019 court order perpetuated error by allowing DSS a **75-days continuance**

19



regarding the reported ICWA notice. (*Id.*, at 14-16.) The court should have corrected this error by removing the children from foster care—and returned the children to Petitioner, and/or Petitioner's family—as instructed under 25 U.S.C. § 1912.

Presumably, DSS' request for a 75-day continuance was to afford DSS the opportunity to investigate Petitioner's ICWA claim further. The continuance would have allowed DSS to contact Petitioner, her aunts, and the extended family—to conduct interviews and an investigation. The continuance afforded DSS time to investigate and conduct interviews to the court may be provided documentation of DSS' efforts on October 22, 2019. (1 Aug. RT 17.)

However, DSS shockingly submitted, (to the tribes on July 22, 2019), all the collected information obtained as a result of their "diligent" investigation and interview process. The submission came just two full business days after DSS: [1] informed the court that they overlooked the June 13, 2019 ICWA notice; [2] misinformed the court that they received notice on July 11, 2019—when they received notice on June 13, 2019; [3] misinformed the court that they performed a diligent family finding for one month—despite acknowledging they received information three business days earlier; [4] requested a 75-day continuance so active efforts may be taken to perform an investigation and interviews.

### b. Reversible Error Exists Because Active Efforts Were Not Made Prior To Termination of Parental Rights And Subsequent Adoption of the Children

DSS violated § 1912(d) because active efforts were not made by DSS. As will be shown in more detail below, active efforts must be: affirmative, active, thorough, and timely. (§ 1912(d).) Active efforts may include conducting, or causing to be conducted, a diligent search for the native child's extended family members. (*Id.*) Under the facts, it cannot be stated that: [1] DSS' active efforts were affirmative, thorough, or timely; nor can it be stated: [2] DSS conducted a diligent search for Petitioner's extended family members.

ICWA states that active efforts must be provided **prior** to foster care or termination of parental rights. (§ 1912(d); emphasis added.) In relevant part, 25 C.F.R. § 23.2 defines active efforts as affirmative, active, thorough, and timely efforts. The language of § 23.2, in relevant part, mandates that active efforts are to be tailored to the facts and circumstances of the case,



which may include: [1] conducting or causing to be conducted a diligent search for the [native] child's extended family members, and contacting and consulting with extended family members to provide family structure and support for the [native] child and the [native] child's parents; and [2] taking steps to keep siblings together whenever possible.

### i. <u>DSS' Efforts Were Not Affirmative</u>

Affirmative[12], in its plain and unambiguous meaning, is defined as: [1] asserting that something is true or correct; and [2] giving assent or approval, confirming. Generally, affirmation may be declared through a declaration, signed under penalty of perjury by the person to be charged, in accordance with the applicable laws of the forum state.

#### 1. *Deficient ICWA-030 Declaration*

In this case, DSS attempts to affirm that ICWA notice was properly conducted; and the results of the diligent DSS' interviews and investigation were provided to the appropriate tribes. (See 1 CT 145, 169, 193.) As the record notes, the declarations submitted were not signed by the person who performed the alleged interviews and/or investigation. Indeed, the declaration was signed by a second social worker "for Mr. Rios." This fact is concerning because it calls into question the reliability of DSS' affirmation supporting diligence in interviewing and investigating Petitioner's ICWA claims. <u>More concernedly</u>, SW Rios **was demoted** prior to the submission of this declaration. SW Rios, in his own words, was demoted because: [1] Rios felt "overwhelmed" in his case load; and [2] Rios was "unable to keep up" with his work—including conducting family findings, interviews, and performing investigations. (1 Aug. RT 57-58.)

SW Rios' statements, made directly to Petitioner, unequivocally contradict the purported affirmation made by DSS—that DSS was diligent in conducting family findings, interviews, and performing investigations, for collecting reliable information, to be presented to the tribes. The contrary positions of DSS' declaration signed "for Mr. Rios" *and* SW Rios' express language for his demotion, stated to Petitioner directly, call into question the reliability of: [1] the submitted ICWA-30 declarations; and [2] the "diligent" investigations and interviews DSS' claims to have conducted.

---

[12] As defined by: http://www.thefreedictionary.com/affirmative.



Last, the ICWA-030 filings were <u>unsigned</u> by either an attorney and/or clerk or court. (See 1 CT 146, 170, 194.) These missing signatures are imperative because there is nothing to affirm that the filings contained the required materials under ICWA.

Therefore, because the ICWA-030 declaration's reliability is in question, DSS has not affirmed the active efforts taken by their department. DSS failed to affirm active efforts were taken prior to termination of Petitioner's parental rights. Thus, this Court should invalidate the state court's termination of parental rights; Petitioner's parental rights should be restored because DSS <u>failed to meet the federal requirements</u> under ICWA.

### 2. DSS <u>*Cannot Affirm*</u> *That They Utilized Active Efforts*

Under the facts of the instant matter, DSS' actions are highly concerning. When the court inquired of the active efforts taken by DSS, (to conform to ICWA requirements), the DSS' responses smack of <u>misinformation</u> and <u>inappropriate burden shifting</u>. The end result was a perpetuated DSS error which caused an invalid order of termination of parental rights.

### a. First Misinformation

As noted above, DSS informed the court, on July 17, 2019, that they "received" Petitioner's ICWA notice on July 11, 2019. DSS further stated that, for one month, they diligently performed under their ICWA duties.

During the July 17, 2019 hearing, DSS attempted to assert that, for one month, they had been performing diligent ICWA obligations. On July 17, 2019, it was <u>factually impossible</u> for DSS to assert that DSS performed diligence for one full month.

Indisputably, per the 2019 July calendar, DSS had <u>three business days</u> for which they *may* have performed *a* search—<u>far less than the month duration DSS purported</u>. DSS stated, at the July 17, 2019 hearing, that: "[DSS is] is working diligently in one month". (*Id.*, at 20-26.) This assertion followed the DSS statement that: "[DSS] was notified [of Petitioner's ICWA claim] on July 11 [2019]". Simply, the timeframe from <u>July 11, 2019</u>, through July 17, 2019, <u>does not constitute a one-month time span.</u> According to the July 2019 calendar, July 13, 2019 and July 14, 2019 fell on a Saturday and Sunday. Thus, on July 17, 2019, DSS *may have had* **three**

22



**business days** to perform the purported diligence. Three-days does not equal one-month. Since three business days does not equal one month, DSS misinformed the court as to their "diligence".

Moreover, DSS <u>only</u> clarified "overlooking" Petitioner's ICWA claim *after* the fact was pointed out by the court. DSS claimed notice on <u>July 11, 2019</u>. The court corrected the record by stating Petitioner claimed ICWA on <u>June 13, 2019</u>. (Almost a full month prior). DSS <u>only</u> admitted to "overlooking" Petitioner's ICWA claim—*after* the court's correction. Pursuant to the record, DSS <u>did not perform any ICWA duties from June 13, 2019 through July 11, 2019</u>— because DSS admitted Petitioner's ICWA claims were overlooked from June 13, 2019 through July 11, 2019. While DSS states they were "working diligently in one month"—the most time they could have spent performing diligence was three business days. (July 11, 2019 through July 17, 2019—when the assertion was made.)

On July 17, 2019, DSS misinformed the court that diligent active efforts had been taking place for one-month. Based, in part, upon these misrepresentations, Petitioner's children were removed from her custody—and placed with foster parents. This removal violated § 1912(d) because active efforts were not made by DSS prior to termination of Petitioner's parental rights and subsequent adoption of the children.

### b.   Second Misinformation

On July 17, 2019, DSS requested a **75-days continuance** regarding the reported ICWA notice. (*Id.*, at 14-16.) Presumably, DSS was requesting a continuance to perfect the federal ICWA requirements—especially considering that the record reflects DSS, at the time for the continuance request, only had three-days' notice of Petitioner's invocation of ICWA. The following series of events, however, does not support this presumption. Based upon the record, DSS: [1] received notice of Petitioner's ICWA claim on <u>July 11, 2019</u>, a Thursday; [2] <u>three business days </u>later, DSS represented to the Court, (<u>on July 17, 2019</u>), that they were being diligent, (<u>for one month</u>), but needed a <u>75-day continuance.</u> Then, on <u>July 22, 2019</u>, just <u>two-business days</u> after the July 17, 2019 hearing, DSS submitted a declaration, stating all known information was provided to the tribes. DSS' July 22, 2019 filing allowed **five to six business days** for ICWA investigation and

23



interviews. On July 17, 2019, DSS declared <u>a need for a 75-day continuance</u> to perfect ICWA requirements, then submitted their findings <u>two days later</u>.  It is highly unlikely that DSS would request such a long continuance, to perfect federal ICWA mandates, if they only needed two additional days to be compliant. It is more likely than not that DSS failed to perfect, (or really even meet any of), their federal ICWA requirements.

### c.  Third Misinformation

On July 22, 2019, DSS submitted three ICWA-030 declarations which were signed "for Mr. Rios". The three ICWA-030 declarations stated SW Rios was the [DSS worker] in the proceeding, and SW Rios submitted all the information he obtained regarding Petitioner's ICWA claim. The three ICWA-030 declarations appear to evidence that: [1] an ICWA investigation was performed; and [2] interviews were conducted regarding extended family members native status.

However, SW Rios <u>never signed the declarations personally</u>. Had the declarations been signed by SW Rios, DSS would have committed perjury because the record reflects SW Rios was: [1] unable to keep up with his assigned case load; and [2] SW Rios felt overwhelmed. Due in part to being unable to keep up with his case load and feeling overwhelmed, SW Rios was demoted. SW Rios' statements, made expressly and directly to Petitioner, support that SW Rios **did not perform** the required investigation and/or interviews. Rather, it appears that the ICWA-030 information, sent to the tribes from DSS on July 22, 2019, <u>contained outdated information</u>.

The submitted information *appears* outdated <u>because</u> the July 22, 2019 ICWA information was sent:

> [1]    just **two business days** *after* DSS misinformed the court, on July 17, 2019, that DSS received notice of Petitioner's ICWA claim on July 11, 2019—which the court <u>corrected</u> that DSS had notice since June 13, 2019;

> [2]    just **two business days** *after* DSS misinformed the court, on July 17, 2019, that DSS was diligent **for one-month**—*despite also declaring* they received Petitioner's ICWA notice **three business days earlier on July 11, 2019**.

> [2]    just **two business days** *after* DSS stated DSS **overlooked** <u>Petitioner's June 13, 2019 filing</u>—and misinformed the court that they received notice on July 11, 2019; and



24

1             [3]     just **two business days** *after* DSS requested a 75-day
2                    continuance to perform the required investigation and
                   interviews.

3       Indisputably, the record supports that DSS acknowledged receipt of Petitioner's updated

4 ICWA information on July 11, 2019. DSS submitted the ICWA findings information on July 22,

5 2019. Under these facts, DSS would only have had **five to six business days** to perform an entire

6 investigation. DSS would only have had **five to six business days** to: [1] contact extended family

7 members; [2] schedule interviews; [3] perform the interviews; and [4] evaluate/report the

8 information. Despite being granted the 75-day continuance, DSS neither conducted, nor

9 submitted, any further information regarding: [1] investigations; and/or [2] interviews with

10 Petitioner's family, from July 22, 2019 through October 24, 2019. To date, zero reports and/or

11 documentation has been produced to evidence either: [1] an investigation; or [2] the extended

12 family interviews.

13       Therefore, when DSS submitted the July 22, 2019 ICWA declaration, signed "for Mr.

14 Rios", DSS presented misinformation regarding DSS' efforts to perform: [1] an ICWA

15 <u>investigation</u> based on Petitioner's June 13, 2019 claim; and [2] <u>interviews</u> of Petitioner's

16 extended family members, regarding Petitioner's June 13, 2019 claim. Thus, DSS <u>cannot affirm</u>

17 that they performed the required federal ICWA mandates in Petitioner's case.

18                   **d. Inappropriate Burden Shifting At The Superior Court Level**

19       On October 22, 2019, DSS moved to declare ICWA inapplicable. (Attachment A, 27.) The

20 court did not request for review any documentation of DSS' active efforts—regarding DSS'

21 ICWA <u>investigation</u> and/or family <u>interviews</u> performed by DSS. DSS never presented any

22 information to the court evidencing the efforts taken to secure extended family interviews; nor,

23 did DSS present additional evidence to the court of the investigative measures taken to obtain

24 additional information.

25       Instead, the court questioned Petitioner further for information supporting her ICWA

26 claim. The court appeared to improperly press <u>Petitioner</u> for more details—regarding Petitioner's

27 claim. The court appeared to inappropriately shift DSS' burden *to Petitioner* by questioning

28 Petitioner about the claim. (*Id.*)



The court erroneously relied upon the misinformation provided by DSS regarding DSS' ICWA investigation and claimed interviews. In part, the court found ICWA inapplicable based upon the unaffirmed information provided by DSS. The court incorrectly shifted the burden to Petitioner to prove her ICWA claim. When Petitioner was unable to do so, the court concluded that: "[the court] think[s] [the court is] okay as far as information". (*Id.*) After <u>Petitioner</u> was unable to provide additional information, the court granted ICWA <u>inapplicable</u>.

### e.  Inappropriate Burden Shifting At The Appellate Court Level

Petitioner filed a timely appeal on January 22, 2021. (Attachment B.) Petitioner's appeal was filed in the Fifth Appellate District, for the State of California, under case number F081686. In relevant part, Petitioner's appeal raised issues concerning ICWA (See Attachment B; [*e.g.*: [1] failure of DSS to conduct an adequate inquiry of extended family members regarding omitted ICWA information; and [2] failure to document/demonstrate that an adequate inquiry had been performed.])

DSS stated DSS does not dispute DSS was required to make further inquiry by interviewing relatives and any other persons who reasonably could have been expected to have information regarding Petitioner's ICWA claim. Rather than demonstrate DSS' investigative efforts, as required by law, DSS stated: "[t]here is nothing in the current record that establishes that the department <u>did not discharge its official duty to investigate</u> the child's possible Cherokee and Yaqui ancestry with further interviews of mother or making efforts to locate identified relatives that may have had additional information…." (Attachment C, 39.)

This statement is a punt. DSS' best argument is that Petitioner cannot prove, or disprove, whether DSS performed their **required** search—and, therefore, should not receive any relief. DSS' reply brief is appalling because it unlawfully <u>burden shifts</u> DSS' own duty by asserting: "[Petitioner] has failed to demonstrate that [DSS] failed to interview her further regarding…ancestry or make other required efforts to investigate the claim[s]…" (Attachment C, 39.)

///

26



1

### f. Perpetuated Appellate Error Leading To Invalid Termination of Parental Rights

2

3   The Appellate decision appears to further shift the burden to Petitioner to support

4   Petitioner's ICWA claim. The Appellate opinion erroneously and incorrectly shifts the burden to

5   Petitioner because the opinion states Petitioner <u>could have</u> subpoenaed DSS about their efforts to

6   perform an adequate investigation at the Superior Court level[13]. (Attachment A, 29.)

7   The Appellate Opinion contends that, but for Petitioner's error of not subpoenaing DSS:

8   "[DSS] now lacks [the] opportunity" to introduce "additional evidence to show that it had made

9   an adequate inquiry" *because* Petitioner never raised the issue sooner, or subpoenaed DSS.

10  (Attachment A, 29.)

11  The Appellate Opinion's analysis does not appear to comport with Federal Law <u>requiring</u>

12  efforts be documented within the record. Simply, had an adequate investigation been performed,

13  the required documented support would have been presented. DSS would have proactively

14  presented such evidence to alleviate any doubt whether DSS performed their "affirmative and

15  continuing duty." Instead, the indisputable facts are: [1] DSS <u>never</u> presented documented

16  evidence of their interviews and/or investigation to either the Superior Court or the Appellate

17  Court; [2] DSS' required burden, (to demonstrate documented efforts in performing adequate

18  investigation), was incorrectly shifted to Petitioner; [2] DSS only "investigated" Petitioner's

19  claims for <u>five to six days</u> (July 11, 2019 through July 22, 2019); [3] DSS did acknowledge error

20  in overlooking Petitioner's claims (1 Aug. RT 16); [4] DSS improperly represented diligence by

21  signing a declaration for SW Rios *after* SW Rios was demoted for being "overwhelmed" and

22  unable to "keep up" with his case load"; and [5] DSS curiously completed a new ICWA inquiry

23  on October 22, 2019 (Attachment A, 29).

24  The Appellate Opinion, further perpetuating the erroneous burden shift by DSS, stripped

25  [13] Essentially, the Appellate decision indicates Petitioner <u>should have</u> raised DSS' failures earlier
in the Superior Court proceeding. This holding is **highly inconsistent** with the rationale of: <u>In re</u>

26  <u>S.M.H.</u>, 103 P.3d 976, 982 (Kan. Ct. App. 2005) and <u>In re S.R.M.</u>, 153 P.3d 438 (Colo. Ct. App.
2006). In the foregoing two cases, the Courts held § 1914 provides a basis for Petitioner to raise

27  ICWA violations for the first time on appeal. The Appellate Court could have considered the
holdings of <u>In re S.M.H.</u>, 103 P.3d 976, 982 (Kan. Ct. App. 2005) and <u>In re S.R.M.</u>, 153 P.3d 438

28  (Colo. Ct. App. 2006) as persuasive authority.



Petitioner of her rights under federal ICWA mandates. Simply, when the courts inquired of the active efforts taken by DSS, (to conform to ICWA requirements), DSS responded by providing misinformation and inappropriate burden shifting. DSS **failed** to investigate Petitioner's ICWA claim. DSS **failed** to perform extended family interviews to ascertain the veracity of the claim. DSS failed to perform the necessary due diligence because SW Rios felt overwhelmed and unable to keep up with his workload. SW Rios' inability to perform his required acts led to his demotion. Rather than ensure the ICWA requirements were strictly adhered to, DSS placed the burden on Petitioner to prove what DSS had, or had not, done. DSS actions neither adhere to the legislative intent of ICWA; nor, do their actions align with the spirit of the law. Should this error not be corrected, it would establish a dangerous precedent that DSS may simply ignore federal law. This Court should strongly consider reviewing this matter—thus holding DSS accountable for their noncompliance under ICWA. In doing so, this Court should restore justice by invalidating the termination of parental rights order against Petitioner.

### ii.    <u>DSS' Efforts Were Not Active</u>

DSS' efforts were not active. On July 17, 2019, DSS informed the court that DSS **<u>overlooked</u>** Petitioner's June 13, 2019 ICWA claim. DSS informed the court that notice was only received on July 11, 2019. Because of this, DSS requested a 75-day continuance, until October 24, 2019, so an adequate and thorough investigation may be performed. On July 22, 2019, DSS submitted the ICWA information to the tribes. No further information was investigated; no additional interviews were conducted. Under these facts, it cannot be stated that DSS took "active" efforts to: [1] investigate Petitioner's June 13, 2019 ICWA claim; or [2] interview extended family members regarding Petitioner's ICWA claim.

### ii.    <u>DSS' Efforts Were Not Thorough</u>

DSS' efforts were not thorough. Indisputably, from July 11, 2019, (notice to DSS), until July 22, 2019, (ICWA submission), DSS had only **<u>five to six business</u>** days to: [1] conduct an investigation; [2] contact family members; [3] schedule appointments; [4] hold interviews; [5] prepare a report; [6] submit their findings; and [7] draft and submit the ICWA-030 information. Of greater concern, the submitted ICWA-030 report includes a signed declaration—which was

1   signed "for Mr. Rios." The concern with this declaration is because: [1] SW Rios was assigned to

2   Petitioner's case; [2] SW Rios was demoted from Petitioner's case; [3] SW Rios expressly and

3   personally informed Petitioner that he was demoted because he was "overwhelmed" with his case

4   load, and he was "unable to keep up" with his work. SW Rios' statements, made to Petitioner,

5   directly contradict the submitted ICWA-030 declaration, which was signed "for Mr. Rios".

6        When inquired by the court of DSS' efforts in investigating and interviewing Petitioner's

7   ICWA claim, DSS stated: "[t]here is nothing in the current record that establishes that the

8   department did not discharge its official duty to investigate the child's possible Cherokee and

9   Yaqui ancestry with further interviews of mother or making efforts to locate identified relatives

10  that may have had additional information…." (Attachment C, 39.) DSS' reply essentially argued

11  that neither the Petitioner, nor the court, could prove that they didn't perform their required

12  functions. DSS claims: "[Petitioner] has failed to demonstrate that [DSS] failed to interview her

13  further regarding…ancestry or make other required efforts to investigate the claim[s]…"

14  (Attachment C, 39.) This assertion is erroneous because it was not Petitioner's burden to prove.

15       Therefore, when reviewing the totality of the circumstances, the facts support a strong

16  inference that: [1] no additional family finding was performed; [2] zero additional family

17  members were interviewed regarding possible ancestry; and [3] no investigation was conducted

18  to acquire additional ancestry information. Last, SW Rios' statements to Petitioner, (regarding his

19  demotion occurring as a result of being "overwhelmed" and "unable to keep up" with his case

20  load), are admissions by DSS that Petitioner's case did not receive the thoroughness **required** by

21  the Federal Government under ICWA.

22

### C. Reversible Error Exists Because The Burdens and Responsibilities, Imposed on DSS, Were Not Met

23

24       The active efforts requirement places great demands on the social worker. Yet that is what

25  Congress intended when it wrote the ICWA. It was the "wholesale separation of Indian children

26  from their families…" that led to its passage. (Establishing Standards for the Placement of Indian

27  Children in Foster Care or Adoptive Homes, to Prevent the Breakup of Indian Families, and for

28  other Purposes, H R Rep. 96-1368, at 9 (July 24, 1978)). Active efforts means just that — Active.



Social workers must work aggressively with the parents to accomplish the congressional goals "to prevent the breakup of the Indian family." (*Id.*)

In some jurisdictions the judicial officer is only required to check a box that indicates that active efforts have been provided to the child's family. **The law requires more**. The judicial officer must make specific findings on the record including detailing the services and the method those services were delivered. (ICWA Regulations §§23.120(a) and 23.120(b); See also People ex rel. A.R., 310 P.3d 1007 (Colo. App. 2012); People ex rel. T.E.R., 305 P.3d 414 (Colo. App. Div. 4 2013).) "Active efforts must be documented in detail in the record." Judges should be ready to ask the social worker questions regarding the efforts taken to meet the legal requirements. (Edwards, L. "Should Judges Ask Questions: The Enquiring Magistrate," The Bench; a publication of the California Judges Association, Fall, 2016 at pp. 6 and 27.) Only through careful inquiry can the judge accurately determine whether the social worker followed the law. Only then can the judge make a finding that active efforts were provided to the family before the court.

Here, the record is fatally lacking regarding any efforts taken by DSS to ascertain the veracity of Petitioner's ICWA claim. The record reflects Petitioner asserted ICWA claims June 13, 2019. (Petitioner claimed ICWA may apply through her father's side. (1 CT 81, 90.) Petitioner claimed her children may have Cherokee and Pascua Yaqui ancestry. (*Id.*)) DSS informed the court that: "[DSS] was notified [of Petitioner's ICWA claim] on July 11 [2019]". (1 Aug. RT 15.) The court corrected the record by stating Petitioner claimed ICWA on "June 13 [2019]". (1 Aug. RT 15.)

DSS attempted to claim DSS performed a diligent investigation for one-month; however, such a claim is factually impossible. DSS' claim was factually impossible because DSS stated they received notice on July 11, 2019; DSS made the claim that DSS performed the one-month diligent search on July 17, 2019. The DSS claim is factually impossible because six calendar days does not equal one-month.

At this same hearing, (July 17, 2019), DSS requested a 75-day continuance—to presumably perform the required investigation and family interviews. The court granted the continuance until October 22, 2019. On July 22, 2019, **just two full business days after the July**

30



**17, 2019 hearing**, DSS submitted their ICWA results—which stated it **included all of the known** information about the relatives.

In looking at Petitioner's **paternal** lineage, DSS provided ICWA notice of the following information:

[1]    For <u>Petitioner's Father</u>, DSS *did list*: a First, Middle, and Last Name; and a birthdate. It is uncertain whether Petitioner's Father's last name descended from the maternal or paternal side of the family. (1 CT 140, 163, 187.)

[2]    For <u>Petitioner's Father</u>, DSS **DID NOT LIST**: [a.] a current or former address; or [b.] a birthplace. (*Id.*, at 140, 163, 187.)

[3]    For <u>Petitioner's Father's Mother</u>, (*Petitioner's Grandmother on Father's side*), DSS **DID NOT LIST**: [a.] a name; [b.] a former or current address; or [c.] a birthdate or birthplace. (*Id.*, at 141, 164, 188.)

[4]    For <u>Petitioner's Father's Father</u>, (*Petitioner's Grandfather on Father's side*), DSS **DID NOT LIST**: [a.] a name; [b.] a former or current address; or [c.] a birthdate or birthplace. (*Id.*, at 141, 164, 188.)

Indisputably, a considerable amount of tracing information <u>is lacking</u>, *especially* pertaining to Petitioner's paternal lineage. Per the received response from the Cherokee and Pascua Yaqui tribes, the accuracy of the ancestry tracing depends upon the totality of information provided by DSS. (*i.e.*: 1 CT 222; "Any incorrect or omitted information could invalidate this determination.") Thus, accuracy diminishes with less provided information.

The record reflects that DSS did not take additional steps to investigate, or validate, Petitioner's ICWA claims—prior to submitting notice to the tribes on July 22, 2019. No additional family interviews or investigative information was updated and/or provided <u>after July 22, 2019</u>. No further information was collected and provided to either the Yaqui or Cherokee tribes. There is <u>zero documented information</u> memorializing either: [1] conducted interviews; and/or [2] investigative steps taken by DSS, regarding ICWA inquiries, during the continuance period.

For the continuance, held October 22, 2019, the court was provided the following information:

[1]    Social Worker Rios *was* the <u>former</u> primary social worker handling Petitioner's case;

[2]    Social Worker Rios <u>was demoted</u> from Petitioner's case;



[3]  Social Worker Rios informed Petitioner that he was demoted because of Rios' inability to diligently and competently handle all his assigned case load—including Petitioner's case. (1 Aug. RT 56-57.)

[4]  Social Worker Rios did not sign, under penalty of perjury, a declaration of diligence. SW Rios' declaration was signed on behalf of a second social worker—for SW Rios. (This is concerning because the statements made by SW Rios directly contradict the contents of the declarations.

The foregoing information, provided to the court on October 22, 2019, supports the strong inference that: [1] no additional family finding was performed; [2] zero additional family members were interviewed regarding possible ancestry; and [3] no investigation was conducted to acquire additional ancestry information. Rios' statements to Petitioner, as the demoted social worker, are **admissions** by DSS that Petitioner's case did not receive the active efforts and/or diligence **<u>required</u>** by the Federal Government under ICWA.

Despite this information coming before the court, the court shifted DSS' burden to Petitioner by questioning Petitioner about the claim. (*Id.*) The court appeared to improperly press <u>Petitioner</u> for more details—regarding Petitioner's claim. The court concluded that: "[the court] think[s] [the court is] okay as far as information". (*Id.*)

The court never made specific findings, on the record, including the detailed investigation or interviews comprised by DSS. DSS' active efforts were never memorialized within the record. DSS was never held accountable by the court regarding the legal requirements and safeguards of ICWA. Rather, the court improperly shifted the burden of proof to Petitioner, on the spot, to validate her claim. After Petitioner was unable to substantiate the court's inquiries, the court erroneously determined that ICWA did not apply.

On timely appeal, Petitioner raised the following issues: [1] DSS failed to conduct an adequate inquiry of extended family members regarding omitted ICWA information; and [2] failure to document/demonstrate that an adequate inquiry had been performed. (Attachment B.) DSS responded that: [1] Petitioner may not raise ICWA for the first time on appeal; [2] "[t]here is nothing in the current record that establishes that the department did not discharge its official duty to investigate the child's possible Cherokee and Yaqui ancestry with further interviews of



mother or making efforts to locate identified relatives that may have had additional information…." (Attachment C, 39.); and [3] DSS shifted their burden by stating: "[Petitioner] has failed to demonstrate that [DSS] failed to interview her further regarding…ancestry or make other required efforts to investigate the claim[s]…" (Attachment C, 39.).

In issuing an opinion, the Fifth District Court of Appeals disregarded any inquiry as to DSS' <u>lack of documented efforts</u> regarding the investigation performed. The opinion appears to incorrectly shift the burden to Petitioner, stating Petitioner owed a duty to subpoena DSS about their efforts to perform an adequate investigation. (Attachment A, 29.) The opinion of the court contends that: "[DSS] now lacks [the] opportunity" to introduce "additional evidence to show that it had made an adequate inquiry" *because* Petitioner never raised the issue sooner, or subpoenaed DSS. (Attachment A, 29.) This analysis does not appear to comport with Federal Law **requiring** efforts be documented within the record.

Simply, had an adequate investigation been performed, the required documented support would have been presented. DSS would have proactively presented such evidence to alleviate any doubt whether DSS performed their "affirmative and continuing duty." Instead, the indisputable facts are: [1] the required DSS burden, (to demonstrate documented efforts in performing adequate investigation), was incorrectly shifted to Petitioner; [2] DSS only "investigated" Petitioner's claims for <u>five to six days</u> (July 11, 2019 through July 22, 2019); [3] DSS did acknowledge error in overlooking Petitioner's claims (1 Aug. RT 16); [4] DSS improperly represented diligence by signing a declaration for SW Rios *after* SW Rios was demoted for being "overwhelmed" and unable to "keep up" with his case load"; and [5] DSS curiously completed a new ICWA inquiry on October 22, 2019 (Attachment A, 29).

In closing, reversible error exists because DSS did not comply with their burdens and responsibilities in performing the ICWA investigation and family interviews. This Court should strongly consider reviewing this matter—thus holding DSS accountable for their noncompliance under ICWA. In doing so, this Court should restore justice by invalidating the termination of parental rights order against Petitioner.

///



**D. Reversible Error Exists Because The Burden on the Court Was Not Followed**

The Code of Federal Regulations, section 23.107(b) states:

> (b) If there is reason to know the child is an <u>Indian child</u>, but the court does not have sufficient evidence to determine that the child is or is not an "Indian child," the court must:
>
> > (1) Confirm, by way of a report, declaration, or testimony included in the record that the <u>agency</u> or other party used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological <u>parent</u> is a member and the child is eligible for membership); and
> >
> > (2) Treat the child as an <u>Indian child</u>, unless and until it is determined on the record that the child does not meet the definition of an "Indian child" in this part.

(25 CFR § 23.107(b); see also Cal. Rules of Court, rule 5.481(b)).

Here, the court was provided ICWA notice by Petitioner on June 13, 2019. On July 17, 2019, the court granted a request by DSS to continue the matter for 75-days—so an investigation and family interviews may be performed. On October 22, 2019, the court heard DSS' evidence regarding the ICWA claim. The court also heard <u>questionable</u> testimony regarding the true diligence of DSS' investigation and family interview process. The undisputed facts, present before the court on October 22, 2019, are as follows:

[1] DSS represented to the court that DSS only became aware the ICWA claim on July 11, 2019. (The court reminded DSS that Petitioner made the ICWA claim on June 13, 2019);

[2] DSS represented a month-long diligence search—despite only becoming aware of the claim <u>three days earlier</u>. (The court inquired how DSS had been diligent in the month since Petitioner made the ICWA claim. DSS stated it <u>overlooked</u> the ICWA inquiry because it was never addressed in previous matters);

[3] DSS requested a 75-day continuance to presumably preform an investigation and conduct interviews—which they never performed.

[4] DSS submitted the notice inquiry for tribal review <u>just **two days** after the July 17, 2019</u> hearing;

[5] DSS never documented diligent, and/or active efforts, of: family finding, family interviews, or investigation into Petitioner's June 13, 2019 ICWA claims;

[6] The time between receiving Petitioner's ICWA claim, and submitting the notice

34



inquiry, was only <u>five to six business days</u>—presumably not enough time to perform due diligence and active efforts;

[7]    DSS requested a 75-day continuance to perform an "investigation"—but submitted a notice inquiry, **two days** <u>after the July 17, 2019 court appearance</u>, based off information they previously had;

[8]    The July 22, 2019 notice letter was drafted by Social Worker Rios—who did inform Petitioner that he was being demoted because: [a] Rios was unable to "keep up" with the assigned case load; and [b] Rios "was overwhelmed".

[9]    The July 22, 2019 declaration of SW Rios, supporting diligence, was not signed by SW Rios—it was instead improperly signed by another worker "for Mr. Rios." This fact is concerning because: [1] generally, a person may not sign a declaration, under penalty of perjury, for the personal knowledge and actions taken by someone else—because of reliability concerns; and [2] SW Rios was demoted for: [a.] being "overwhelmed" in his case load; and [b.] being unable to keep up with his work. (1 Aug. RT 57-58.) Thus, the included declaration, not actually a declaration signed by SW Rios, is in stark contrast to the requirement of diligence. A reasonable inference supports there **was no diligence** because the person claiming diligence was demoted for being "overwhelmed" and "unable to keep up" with his case load. Simply, SW Rios did not personally sign the declaration; DSS <u>improperly allowed another SW to sign for SW Rios' conduct</u>—*representing* diligence after Rios was demoted for failure to perform diligently. DSS' failure to have SW Rios sign this declaration exceeds harmless error because it is a procedural defect <u>which violates the federal mandates of ICWA</u>.

[10]    All three ICWA-030 Letters were sent **without signature** of an attorney declaring the petition, **and its required contents**, were mailed. The ICWA-030 was further missing any signature supporting the Certificate of Mailing.

When considering the ICWA inquiry letter's submission, in juxtaposition with Social Worker Rios' claims, a logical and rational nexus <u>cannot</u> be drawn to support confirmation that DSS used due diligence: [1] to investigate Petitioner's ICWA claim; or [2] to interview family interviews. Instead, the facts support the strong inference that: [1] no additional family finding was performed; [2] zero additional family members were interviewed regarding possible ancestry; and [3] no investigation was conducted to acquire additional ancestry information.

Therefore, the court erred when it failed to confirm, by way of a report, declaration, or testimony included in the record that DSS used due diligence to identify and verify the veracity of Petitioner's ICWA claims. The court further erred in shifting the DSS burden to Petitioner—to prove her native heritage. Thus, reversible error exists because the court failed to confirm, by way of a report, declaration, or testimony included in the record, that DSS used due diligence to identify and verify the veracity of Petitioner's ICWA claims. Thus, this Court should strongly

consider reviewing this matter; this Court should restore justice by invalidating the termination of parental rights order against Petitioner.

**E.  Reversible Error Exists Because Federal Notice Requirements Were Deficient**

Federal regulators, (pursuant to 25 C.F.R. § 23.11), require that the notice contain the following information:

[1]    the child's name, birth date, and birthplace;

[2]    the name of the Indian tribe(s) in which the child is enrolled or may be eligible for enrollment;

[3]    all names known and <u>current and former addresses</u> of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, <u>including maiden, married, and former names or aliases; birthdates; places of birth</u> and death; tribal enrollment numbers; and <u>other identifying information;</u>

[4]    a copy of the petition, complaint, or other document by which the proceeding was initiated;

[5]    a statement of the absolute right of the biological Indian parent(s), the child's Indian custodian(s), and the child's tribe to intervene in the proceedings;

[6]    a statement that if the parent(s) or Indian custodian(s) is (are) unable to afford counsel, and a state court determines indigency, counsel will be appointed to represent the parent(s) or Indian custodian(s);

[7]    a statement of the right of the parent(s), Indian custodian(s), and child's tribe to be granted, upon request, up to twenty additional days to prepare for the proceedings;

[8]    the location, mailing address, and telephone number of the court and all parties notified of the proceeding;

[9]    a statement of the right of the parent(s), Indian custodian(s), and child's tribe to petition the court for transfer of the proceeding to the child's tribal court pursuant to 25 U.S.C. § 1911, absent objection by either parent, provided that the tribal court may decline jurisdiction; and

[10]   a statement of the potential legal consequences of the proceedings on the future custodial and parental rights of the parent(s) or Indian custodian(s).

As noted above, DSS was deficient in providing ICWA notice regarding the following information:

[1]    For <u>Petitioner's Father</u>, DSS *did list*: a First, Middle, and Last Name; and a birthdate. It is uncertain whether Petitioner's Father's last name descended from the maternal or paternal side of the family. (1 CT 140, 163, 187.)

[2]    For <u>Petitioner's Father</u>, DSS **DID NOT LIST**: [a.] a current or former address; or



[b.] a birthplace. (*Id.*, at 140, 163, 187.)

[3]      For <u>Petitioner's Father's Mother</u>, (*Petitioner's Grandmother on Father's side*), DSS **<u>DID NOT LIST</u>**: [a.] a name; [b.] a former or current address; or [c.] a birthdate or birthplace. (*Id.*, at 141, 164, 188.)

[4]      For <u>Petitioner's Father's Father</u>, (*Petitioner's Grandfather on Father's side*), DSS **<u>DID NOT LIST</u>**: [a.] a name; [b.] a former or current address; or [c.] a birthdate or birthplace. (*Id.*, at 141, 164, 188.)

The substantial amount of missing information from the submitted DSS ICWA-030 forms is concerning because: per the received response from the Cherokee and Pascua Yaqui tribes, the accuracy of the ancestry tracing depends upon the totality of information provided by DSS. (*i.e.*: 1 CT 222; "Any incorrect or omitted information could invalidate this determination.") Thus, accuracy diminishes with less provided information. The record reflects that DSS did not take additional steps to investigate, or validate, Petitioner's ICWA claims—prior to submitting notice to the tribes.

Indeed, the record reflects that: [1] DSS SW Rios was demoted due to his inability to keep up with his case load. (1 Aug. RT 57 l. 11-15.); [2] Rios told Petitioner that [Rios] was being demoted (*Id.*, at 19-26.); [3] Rios informed Petitioner that his demotion was in relation to Petitioner's case—as well as generally (*Id.*); [4] Rios did inform Petitioner "**he wasn't able to keep up** [with his assigned case load] (*Id.*); and [5] [Rios] "**was overwhelmed**". (1 Aug. RT 58 l. 6.) Regarding this information, the court indicated: "[Petitioner] heard [this information] from [Rios]. [The court] would allow it…" (1 Aug. RT 59, l. 1.)

In light of the overall record, Petitioner's ICWA-030 report was submitted with insufficient information—despite DSS receiving a continuance to obtain additional information. Concernedly, DSS submitted the information three days after receiving a continuance—to perform the appropriate investigation and family finding. A strong inference may be drawn that Petitioner's ICWA notice was submitted without active efforts, or diligence, in conducting any family investigation—to obtain the missing information.

Thus, reversible error exists because the Federal Notice requirements were deficient. Thus, this Court should strongly consider reviewing this matter; this Court should restore justice by invalidating the termination of parental rights order against Petitioner.

37



**F. DSS FAILED TO MEET THE FEDERAL REQUIREMENTS OF ICWA BY FAILING TO PROVIDE THE COURT WITH DOCUMENTATION OF ACTIVE/DILIGENT EFFORTS TO ASCERTAIN INDIAN (NATIVE AMERICAN) ANCESTRY**

**1. Active Efforts Documentation Requirements For DSS**

Active efforts must be documented in the court records before requesting foster care or termination of parental rights. (ICWA Regulations §§23.120(a) and 23.120(b). "Active efforts must be documented in detail in the record.") The Guidelines recommend that the documentation include the following in addition to any other relevant information. (1) The issues the family is facing that the State agency is targeting with the active efforts (these should be the same issues that are threatening the breakup of the Indian family or preventing reunification); (2) A list of active efforts the State agency determines would best address the issues and the reasoning for choosing those specific active efforts; (3) Dates, persons contacted, and other details evidencing how the State agency provided active efforts: (4) Results of the active efforts provided and, where the results were less than satisfactory, whether the State agency adjusted the active efforts to better address the issues. (ICWA Regulations §23.120(b) Guidelines.) Courts that simply check a box on a pre-printed form that active efforts have been provided would not be following the law.

Here, DSS has <u>not produced:</u> [1] evidence of the active efforts taken by DSS regarding investigating Petitioner's June 13, 2019 ICWA claims; or [2] evidence of the active efforts taken by DSS regarding conducting family interviews regarding Petitioner's ICWA claims. When Petitioner presented inquiries of DSS' documented efforts, in her appeal, DSS responded with: [1] "[t]here is nothing in the current record that establishes that the department did not discharge its official duty to investigate the child's possible Cherokee and Yaqui ancestry with further interviews of mother or making efforts to locate identified relatives that may have had additional information…." (Attachment C, 39.); and [2] "[Petitioner] has failed to demonstrate that [DSS] failed to interview her further regarding…ancestry or make other required efforts to investigate the claim[s]…" (Attachment C, 39.) Essentially, DSS' response amounts to: Petitioner cannot prove whether DSS performed, or did not perform, their required duties. This rationale does not



1    comport with the law. Simply, every opportunity was provided to DSS to cure the deficiency. It

2    is presumed the deficiency was never cured because DSS does not have documentary evidence—

3    because DSS never performed their mandatory requirements.

4

5          **2.**   **Code of Federal Regulations § 23.120 <u>Requires</u> DSS To Provide The Court With <u>Detailed Documentation</u> Memorializing, In The Record, Evidence Of The Active Efforts Taken By DSS In: [1] Interviewing Extended Family Members; And [2] Conducting An Investigation Regarding ICWA Claims**

6

7          The party seeking an involuntary foster care placement, guardianship, order freeing the

8    child from the custody & control of one or both parents, or termination of parental rights **must**

9    **provide *evidence* to the court that active efforts** have been made. (See 25 C.F.R. § 23.120(b).)

10   Active efforts **must include** the available resources of extended family members. Active efforts

11   **must be affirmative, active, thorough, & timely**. (See Active Efforts: 25 U.S.C. §1912(d); 25

12   C.F.R. §§23.2 & 23.120; Guidelines E.1-E.6; Fam. Code, §§177(a), 3041(e); Prob. Code,

13   §1459.5(b); WIC, §§ 224.1(f), 361.7; Rule5.485(c).)

14         The active-efforts requirement is a key protection provided by ICWA, and it is important

15   that compliance with the requirement is documented in the court record. The significance of the

16   required documentation is two-fold:

17             [1]   25 U.S.C. § 1914 permits an Indian child, parent, Indian

18                   custodian, or Tribe to petition a court of competent jurisdiction to invalidate a foster-care placement or termination of parental rights upon a showing that the action

19                   violated § 1912 of the statute; and

20             [2]   the parties to the proceeding also have appeal rights.

21         To effectively exercise these rights—regarding DSS' active efforts—there must be a

22   record of the basis for the court's decision. As such, the final rule continues to provide **that**

23   **documentation of active efforts must be part of the court record**. (See 25 C.F.R. § 23.120(b).)

24         Thus, in any ICWA case, the documentation of DSS' active efforts **must be clear and**

25   **thorough**. The language of C.F.R. § 23.120(b), is plain and unambiguous: "[a]ctive efforts **must**

26   **be documented in detail in the record**." (See Adjudication of Involuntary Proceedings, 25 e-

27   C.F.R., § 23.120 (2018); emphasis added). The social worker, probation officer, or petitioner **is**

28   **responsible for *providing* and *documenting* active efforts**.



Here, there is no record of DSS' active efforts because the court never required DSS to provide any documentation. Instead, the court incorrectly shifted the burden onto Petitioner—by inquiring whether Petitioner could validate the information regarding the claimed ICWA information. When Petitioner could not provide more detailed information, the court concluded: "[the court] think[s] [the court is] okay as far as information". (Attachment A, 27.)

On appeal, Petitioner provided DSS a second opportunity to provide documentation. However, in reply, DSS stated: [1] "[t]here is nothing in the current record that establishes that the department did not discharge its official duty to investigate the child's possible Cherokee and Yaqui ancestry with further interviews of mother or making efforts to locate identified relatives that may have had additional information…." (Attachment C, 39.); and [2] "[Petitioner] has failed to demonstrate that [DSS] failed to interview her further regarding…ancestry or make other required efforts to investigate the claim[s]…" (Attachment C, 39.) DSS effectively bypassed its burden by shifting their burden to Petitioner.

The opinion disregards any inquiry as to DSS' <u>lack of documented efforts</u> regarding the investigation performed. The Fifth Appellate Court ultimately sided with DSS by finding Petitioner should have: [1] presented her ICWA claim earlier in the proceeding; and [2] Petitioner should have subpoenaed DSS about their efforts to perform an adequate investigation. (Attachment A, 29.) The opinion of the court contends that: "[DSS] now lacks [the] opportunity" to introduce "additional evidence to show that it had made an adequate inquiry" *because* Petitioner never raised the issue sooner, or subpoenaed DSS. (Attachment A, 29.)

This analysis does not appear to comport with Federal Law **<u>requiring</u>** efforts be documented within the record. Simply, had an adequate investigation been performed, the required documented support would have been presented. DSS would have proactively presented such evidence to alleviate any doubt whether DSS performed their "affirmative and continuing duty."

Instead, the indisputable facts are: [1] the required DSS burden, (to demonstrate documented efforts in performing adequate investigation), was <u>incorrectly shifted to Petitioner</u>; [2] DSS only "investigated" Petitioner's claims for a total <u>five to six days</u> (July 11, 2019 through



1    July 22, 2019); [3] DSS did acknowledge error in overlooking Petitioner's claims (1 Aug. RT 16);

2    [4] DSS improperly represented diligence by signing a declaration for SW Rios *after* SW Rios

3    was demoted for being "overwhelmed" and unable to "keep up" with his case load"; and [5] DSS

4    curiously completed a new ICWA inquiry on October 22, 2019 (Attachment A, 29).

5        Review of Petitioner's claims is necessary by this Court because, under the facts, it appears

6    DSS: [1] took efforts to minimize their burden; [2] inappropriately shifted the burden to Petitioner;

7    [3] misinformed the courts; [4] failed to utilize  clear and thorough active efforts, (in investigating

8    and interviewing family members), regarding Petitioner's ICWA claims; and [5] failed to

9    document the active efforts in detail and ensure the documented efforts became part of the court

10    record. As a result of the DSS' failures, Petitioner's parental rights were terminated, and her

11    children were adopted out in violation of Petitioner's ICWA rights. Thus, this Court should

12    strongly consider reviewing this matter; this Court should restore justice by invalidating the

13    termination of parental rights order against Petitioner.

14

15    **G. Appellate Court Erred In Presenting Discussion That ICWA Should Have Been Raised Earlier**

16        Section 1914 provides a basis to raise ICWA violations for the first time on appeal. (In re

17    S.M.H., 103 P. 3d 976, 982 (Kan. Ct. App. 2005); In re S.R.M., 153 P.3d 438 (Colo. Ct. App.

18    2006.) Petitioner properly raised ICWA concerns in Petitioner's timely appeal. (See Attachment

19    B; [*e.g.*: [1] failure of DSS to conduct an adequate inquiry of extended family members regarding

20    omitted ICWA information; and [2] failure to document/demonstrate that an adequate inquiry had

21    been performed.])

22        In the reply brief, DSS stated: "[t]here is nothing in the current record that establishes that

23    the department did not discharge its official duty to investigate the child's possible Cherokee and

24    Yaqui ancestry with further interviews of mother or making efforts to locate identified relatives

25    that may have had additional information…." (Attachment C, 39.) DSS erroneously shifted DSS'

26    burden by asserting: "[Petitioner] has failed to demonstrate that [DSS] failed to interview her

27    further regarding…ancestry or make other required efforts to investigate the claim[s]…"

28    (Attachment C, 39.)



1
2          The Fifth Appellate District Court, for the State of California, erroneously opined that

3    Petitioner should have raised ICWA concerns earlier in the proceeding. The opinion of the court

4    contends that: "[DSS] now lacks [the] opportunity" to introduce "additional evidence to show that

5    it had made an adequate inquiry *because* Petitioner never raised the issue sooner, or subpoenaed

6    DSS. (Attachment A, 29.) Petitioner submits that the Fifth Appellate District's opinion does not

7    appear to comport with Federal Law <u>requiring</u> efforts be documented within the record.

8          Simply, had an adequate investigation been performed, the required documented support

9    <u>would have been presented</u>. DSS would have proactively presented such evidence to alleviate any

10   doubt whether DSS performed their "affirmative and continuing duty."

11         Instead, the indisputable facts are:

12         [1]    DSS <u>never</u> presented documented evidence of their interviews and/or investigation
                   to either the Superior Court or the Appellate Court;

13         [2]    The <u>required</u> DSS <u>burden</u>, (to demonstrate documented efforts in performing
14                adequate investigation), <u>was incorrectly shifted to Petitioner</u>;

15         [3]    DSS only "investigated" Petitioner's claims for <u>five to six business days</u> (July 11,
                   2019 through July 22, 2019);

16         [4]    DSS <u>did acknowledge error in overlooking Petitioner's claims</u> from June 13, 2019
                   to July 11, 2019 (1 Aug. RT 16);

17         [5]    DSS improperly represented diligence by signing a declaration "for Mr. Rios" *after*
18                SW Rios was demoted for being "overwhelmed" and unable to "keep up" with his
                   case load";

19         [6]    DSS submitted the three ICWA-030 declarations without a signed declaration of
                   mailing.

20
21         [7]    DSS curiously completed a new ICWA inquiry on October 22, 2019 (Attachment
                   A, 29).

22         Under the indisputable facts, it appears DSS took substantial measures to <u>cover up</u> their

23   deficiencies—rather than take any affirmative steps *to cure* the deficiencies. To date, DSS has

24   been allowed to operate in bad faith by improperly shifting the DSS burden onto Petitioner. The

25   California State Courts have perpetuated the DSS error by continuing to hold the burden on

26   Petitioner. Petitioner brings this instant petition to the Federal Courts in an effort to have the DSS

27   held accountable for their willful and deliberate noncompliance with the Federal Mandates if

28   ICWA. Petitioner prays this Court order DSS to perform their federal requirements under the



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Federal Mandates of ICWA. Petitioner prays this Court restore justice by invalidating the termination of parental rights order against Petitioner.

**H. Invalidation Of Termination Of Parental Rights And Adoption Placement Is Mandatory Under Violations Of Section 1914**

Upon a showing that section 1914 of ICWA has been violated, invalidation of a previous termination of parental rights is mandatory. Petitioner posits that invalidation of a foster care placement—as well as a finalized adoption—is also mandatory. (See, *e.g.*, In re L.A.M., 727 P.2d 1057 ( Alaska 1986); In re Morgan, 364 N.W.2d 754 (Mich. Ct. App. 1985); In re H.D., 729 P.2d 1234 (Kan. Ct. App. 1986).

Here, Petitioner has copiously evidenced that DSS violated § 1914 of ICWA. Rather than cure the DSS deficiencies, DSS: [1] continuously misinformed the court of DSS' diligence; [2] improperly shifted the burden to Petitioner to prove the ICWA claims; [3] egregiously covered up DSS errors by shifting the burden to Petitioner; and [4] failed to document, evidence, and/or present DSS' extended family interviews and ICWA investigation.

DSS failed to perform the Federal requirements under ICWA. DSS violated § 1912; which affords Petitioner the right to have this matter reviewed under § 1914. Upon concurrence by this Court that DSS violated § 1914, it will be mandatory for this Court to invalidate the previous state order which terminated Petitioner's parental rights. Petitioner prays this Court invalidate the order of termination of her parental rights—so adequate ICWA findings may be performed. Petitioner additionally prays for a re-hearing on her .26 termination of parental rights hearing; upon a showing that DSS complied with the Federal ICWA requirements.

## IV. CONCLUSION

For all the reasons stated above, Petitioner prays this Court GRANT Petitioner's requested relief of: [1] granting the petition for review under 25 U.S.C. § 1914; [2] Order an evidentiary hearing; and/or [3] Order a Certificate of Appealability. Additionally, Petitioner prays: [1] this Court invalidate the termination of parental rights against Petitioner by the State of California; and [2] terminate the finalized adoption proceeding which occurred in violation of Petitioner's rights under ICWA.

43



1    Dated: December 27, 2021                    Respectfully Submitted,
                                                MORAN LAW FIRM
2

3

4                                               By: Jason T. Oleson
                                                Post Grad Law Clerk
5

6

7                                               Amanda K. Moran
                                                Attorney for Petitioner Crystal Esquivel
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28